AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

VERA McVEY, on behalf of herself individually
and all others similarly situated,

Plaintiffs,

**SUMMONS IN A CIVIL CASE**

V.

CASE NUMBER:

BAYERISCHE HYPO-UND VEREINBANK AG
and HVB AMERICA LLC f/k/a HVB AMERICA
INC.,

Defendants.

## 05 CV 9809
JUDGE SWAIN

TO: (Name and address of defendant)

HVB AMERICA LLC
150 East 42nd Street
New York, New York 10017

BAYERISCHE HYPO-UND FEREINSBANK (AG)
Kardinal-Faulhaber-Str. 1
Munich, Germany 80333

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MORELLI RATNER PC
950 Third Avenue, 11th Floor
New York, New York 10022
(212) 751-9800
Attention: Martha McBrayer, Esq.

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

NOV 1 8 2005

CLERK

DATE

(BY) DEPUTY CLERK

JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==========================X
VERA McVEY, on behalf of herself individually
and all others similarly situated,

**05  CV      9809**

     Plaintiffs,

CLASS ACTION
COMPLAINT

     -against-

Docket No.:

BAYERISCHE HYPO-UND VEREINSBANK
AG and HVB AMERICA LLC f/k/a HVB
AMERICA INC.,

PLAINTIFF DEMANDS A
TRIAL BY JURY

     Defendants.     .
==========================X



RECEIVED
NOV 18 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff VERA McVEY, on behalf of herself individually and on behalf of all others

similarly situated, by her attorneys MORELLI RATNER PC, complaining of the Defendants

herein, upon information and belief respectfully alleges as follows:

    1.    Plaintiff VERA McVEY  is a resident of the City of New York, State of New

York.

    2.    This class action lawsuit arises out of an ongoing wrongful scheme by Defendants

BAYERISCHE HYPO-UND VEREINSBANK AG and its wholly-owned subsidiary, HVB

AMERICA INC. ("HVB AMERICA") to deprive Plaintiff VERA McVEY and other female

executives, officers and managers working in New York and throughout the United States

(collectively, "Class Members") of equal pay for commensurate work because of their gender, in

violation of the Equal Pay Act, 29 USC Section 206(d)(1).

    3.    Since approximately 1997 through the present, Plaintiff VERA McVEY and

members of her Class have worked for, and continue to work for, Defendants BAYERISCHE

United States as Executives.

4.     At all times hereinafter mentioned, Defendant BAYERISCHE HYPO-UND VEREINSBANK AG ("HVB Group") was and is a corporation duly organized and existing under and by virtue of the laws of Germany.  Defendant HVB Group has approximately fifty-eight thousand employees.

5.     Defendant HVB Group is the second-largest private bank in Germany.  HVB Group provides a full range of commercial, retail, investment and mortgage banking services to some 9.8 million customers through 2100 branches in 15 countries located around the world. Since 1975, HVB Group's New York Branch has conducted banking business on HVB Group's behalf throughout the United States.

6.     At all times hereinafter mentioned, Defendant HVB AMERICA was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the City of New York, State of New York.  Defendant HVB AMERICA has approximately 300 employees.

7.     Commencing approximately 1998 through the present, Defendant HVB AMERICA was and continues to be the wholly-owned subsidiary of Defendant HVB Group, it's parent company.  Defendant HVB was formed in 1998 as the holding company for the Corporates & Markets Division/Investment Banking Division of Defendant HVB Group in the United States.  Defendants  HVB Group and HVB AMERICA shall hereinafter be collectively referred to as Defendants "HVB."

8.     During Plaintiff's employment with Defendants HVB, commencing approximately 1997 through approximately 2003, Stephan Bub served at various times as Regional Head Americas, Regional Head Americas & Asia, Divisional Board Member and HVB

Group Board Member, a supervisor, manager and employee of HVB AMERICA and HVB Group. Throughout that time, in his capacity as Chairman of the Management Committee, Mr. Bub had authority to increase or decrease the annual compensation of Plaintiff VERA McVEY and other Class Members.

9.      During Plaintiff's employment with Defendants HVB, commencing approximately August 2003 through the present, Dr. Michael Kemmer has been Chief Risk Officer and a Member of the Managing Board for Defendant HVB Group, and a supervisor, manager and employee of HVB Group. Dr. Michael Kemmer is Henning Giesecke's immediate supervisor.

10.     During Plaintiff's employment with Defendants HVB, commencing approximately late 2000 until approximately January 2004, Stefan Schmittmann has been Chief Credit Risk Officer, Managing Director and Divisional Board Member for Defendant HVB Group, and a supervisor, manager and employee of HVB Group. Throughout that time, Dr. Schmittmann was Plaintiff VERA McVEY's immediate supervisor.

11.     During Plaintiff's employment with Defendants HVB, commencing approximately January 2004 through the present, Henning Giesecke has been Chief Credit Risk Officer, Managing Director and Divisional Board Member for Defendant HVB Group, and a supervisor, manager and employee of HVB Group. Commencing approximately January 2004 through the present, Mr. Giesecke has been Plaintiff VERA McVEY's immediate supervisor.

12.     During Plaintiff's employment with Defendants HVB from approximately August 2003 through the present, Dr. Stefan Jentzsch has been Defendant HVB Group's C&M Board Member, a supervisor, manager and employee of HVB Group and HVB AMERICA. Dr. Jentzsch is Ronald Seilheimer's immediate supervisor.

13.     During Plaintiff's employment with Defendants HVB from approximately August 2002 through the present,  Ronald Seilheimer has been Defendant HVB Group's Divisional Board Member for Corporates & Markets ("C&M"), Divisional Board Member for Defendant HVB AMERICA, and a supervisor, manager and employee of HVB AMERICA.  Commencing approximately July 2003 through approximately July 2004, Plaintiff VERA McVEY reported directly to Ronald Seilheimer in her function as Regional Head Americas and Head of Corporates.

14.     At all times material to this Complaint, the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and/or agents of Defendants HVB.

15.     Jurisdiction of the subject matter of this action is established in this Court under the Equal Pay Act, Title 29 of the United States Code, Section 206(d)(1).  This is the proper venue for this action under the Equal Pay Act of 1963, Title 29 of the United States Code, Section 206(d)(1) et seq., in that unlawful acts alleged herein were committed within this Court's jurisdiction.

## GENERAL ALLEGATIONS OF GENDER DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT

16.     Throughout their employment at HVB, despite receiving promotions, Plaintiff VERA McVEY and the Class Members were compensated differently (i.e., less) than male employees at the company performing commensurate duties and holding commensurate positions.

17.     This disparate compensation included unequal pay, unequal wages, unequal benefits, unequal opportunities, unequal expense accounts, unequal profit sharing, and unequal

fringe benefits (including unequal insurance benefits, unequal retirement benefits, unequal bonus plans and unequal leave)directed toward herself and other female executives, officers and managers as opposed to men who were similarly employed by and situated at HVB.

18.     Throughout Plaintiff's and the Class Members employment, there existed at Defendants HVB an ongoing and pervasive corporate culture that favored male employees and disfavored female employees, and manifested in discriminatory payment of female employees.

19.     The discrimination at Defendants HVB against female employees adversely affected the terms and conditions of the employment of Plaintiff and other Class Members. Since January 2001, I have served as Chief Credit Officer of HVB Americas.

## SPECIFIC ALLEGATIONS OF GENDER DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT

20.     Commencing approximately October 1997, Plaintiff VERA McVEY worked as a Senior Risk Manager for Defendants HVB in New York.

21.     In approximately February 1998, Plaintiff VERA McVEY was promoted to Senior Risk Manager and Head of Credit Risk Management for HVB Americas.

22.     In approximately January 2001, Plaintiff VERA McVEY was promoted to the Management Committee Americas as Chief Credit Officer for HVB Americas.  In approximately January 2002, Plaintiff was further promoted to the Management Committee Asia as Chief Credit Officer HVB Asia.  At the same time, Plaintiff continued in my position as Chief Credit Officer HVB Americas.

23.     In approximately July 2003, Plaintiff VERA McVEY was promoted to Regional Head Americas.

24.     In approximately March 2004, Plaintiff **VERA McVEY** was demoted, without cause, to her former position as Chief Credit Officer HVB Americas & Asia.

25.     From January 2002 until approximately May 2005, Plaintiff **VERA McVEY** served as Chief Credit Officer of HVB Americas & Asia. In that capacity, Plaintiff **VERA McVEY** supervised a staff of approximately 50 people, including Senior Risk Managers who in turn supervise teams of Analysts and Risk Underwriters.

26.     Since approximately 2001, Plaintiff **VERA McVEY** has also served as a member of HVB Group's Credit Committee in Munich, Germany.

27.     Throughout her approximately eight years of employment with Defendants **HVB**, Plaintiff **VERA McVEY** has routinely received excellent evaluations and reviews.

28.     On or about January 19, 2005, Henning Giesecke praised Plaintiff **VERA McVEY** in her annual performance review for her "excellent expertise in the fields of credit and workout," her "very good assessment of risk and return," her "high motivation to perform," her "strong and consequent implementation," her "very constructive cooperation" and her "strong ability to resolve conflicts." Mr. Giesecke further described Plaintiff **VERA McVEY** as a "good negotiator," a "self starter who develops own initiative" and a "tough, but fair manager."

30.     Nevertheless, throughout her employment, Defendants **HVB** have paid Plaintiff **VERA McVEY** substantially less than her male peers.

31.     In approximately October 1997, Plaintiff **VERA McVEY**'s starting salary was approximately $195,000. Plaintiff's starting salary was markedly less than that paid at the same time to men holding comparable positions and titles and bearing comparable responsibilities and duties at Defendants **HVB**.

32.     Presently, Plaintiff **VERA McVEY**'s annual salary is $350,000 and she is

guaranteed an annual bonus of a minimum of $150,000 for her performance in 2005. Plaintiff's current salary is markedly less than that currently paid to men holding comparable positions and titles and bearing comparable responsibilities and duties at Defendants HVB.

33.     While Plaintiff's and the Class Members' salaries and bonuses at Defendants HVB have increased over the approximately eight year period since 1997, nevertheless throughout their employment, the total compensation paid to these women has been substantially less than that of their male peers even though Plaintiff and the Class Members have the equivalent or more experience and seniority, and their contribution to Defendants HVB's overall success has been comparable or better.

34.     In approximately 2001, Plaintiff VERA McVEY as Head of Corporate Credit, and Rolf Quaas as Head of Corporates, were at the same title level, had comparable banking experience, and comparable seniority at Defendants HVB. Notwithstanding the foregoing, Plaintiff's total compensation in 2001 was $750,000, some $810,000 (or 52%) less than Rolf Quaas' total compensation of $1,560,000.

35.     In 2001, Plaintiff VERA McVEY's base salary was $300,000 whereas her functional peer, Rolf Quaas, enjoyed a base salary of $350,000.

36.     In 2001, Head of Corporates Rolf Quaas received a cash bonus of $760,000 and an incentive deferred bonus of $450,000 for 2000. At the same time, as Head of Corporate Credit, Plaintiff VERA McVEY received a cash bonus of $250,000 ($510,000 less than her functional peer) and an incentive deferred bonus of $200,000 for 2000 ($250,000 less than her functional peer.)

37.     In 2001, another service unit head on the Management Committee, Plaintiff's peer Chief Operating Officer Christopher Wrenn, received a total compensation package of

$952,000, including $352,000 in cash bonus and $350,000 in incentive deferred bonus.  Mr. Wrenn's total compensation exceeded Plaintiff **VERA McVEY**'s total compensation by $202,000, or 27%.  This was so even though there was no discernable difference in responsibilities between Christopher Wrenn's functions as Chief Operating Officer and Plaintiff **VERA McVEY**'s Chief Credit Officer functions, other than the size of their departments.  While Mr. Wrenn's back office operations staff was typically filled with more lower-level staff, Plaintiff's staff was generally smaller but more senior than Mr. Wrenn's.

38.    In approximately 2002, the pay disparity between Plaintiff **VERA McVEY**'s male peers, Head of Corporates Rolf Quaas, Chief Operating Officer Christopher Wrenn, and Head of Credit Real Estate Johann Berger was similarly markedly discriminatory.

39.    In approximately 2002, Plaintiff **VERA McVEY**'s total compensation was $750,000, some $650,000 (or 46%) less than the $1,400,000 Defendants **HVB** paid to Plaintiff's functional peer, Rolf Quaas.

40.    In approximately 2002, Defendants **HVB** paid Plaintiff, the Head of Corporate Credit, a $350,000 base salary plus $200,000 cash bonus plus $200,000 incentive deferred bonus. At the same time, Defendants **HVB** paid Rolf Quaas, the Head of Corporates, the same  base salary as Plaintiff but $350,000 more in a cash bonus ($550,000) and $300,000 more ($500,000) for his incentive deferred bonus.

41.    In approximately 2002, Defendants **HVB** paid Chief Operating Officer Christopher Wrenn a total compensation of $1,150,000, or approximately 35% above Plaintiff **VERA McVEY**'s total compensation.

42.    In approximately 2002, Johann Berger served as Head of Credit Real Estate and a member of the Managing Committee, the same position level as Plaintiff **VERA McVEY**.

43.     In approximately 2002, Head of Credit Real Estate Johann Berger's total compensation from Defendants HVB was $1,150,000 ($250,000 base salary plus $600,000 cash bonus plus $300,000 incentive deferred bonus.)  Johann Berger's total compensation in 2002 exceeded the total compensation Defendants HVB paid to Plaintiff VERA McVEY by $450,000, or 65%.

44.     In approximately 2002, Johann Berger had significantly less responsibilities than Plaintiff VERA McVEY.  Mr. Berger's responsibility was for one product (Real Estate) within the United States whereas Plaintiff's responsibilities encompassed North America, South America, Asia and Japan.  In addition, Plaintiff VERA McVEY became a member of the head office based Group Credit Committee; Berger was not a member.  Moreover, when Johann Berger took over his new function, Plaintiff VERA McVEY and her team were instrumental in helping Mr. Berger build a compliant infrastructure and establish a credit function within Real Estate.  In fact, Johann Berger was originally supposed to report to Plaintiff.

45.     In approximately 2002, Defendants HVB paid Matthew Dunn, a fellow member of the Board with Plaintiff, a total compensation of approximately $1,067,500, or $317,500 more than Plaintiff.

45.     In approximately May 2003 following Stephan Bub's departure from the Board, Christopher Wrenn, Matthew Dunn and Plaintiff VERA McVEY were the three remaining members of Defendants HVB's Management Committee.

46.     On or about July 2003, Dr. Stefan Jentzsch appointed Plaintiff VERA McVEY Regional Head HVB Americas.  Walter Fuchs was appointed Regional Head HVB Asia.  At the same time, Plaintiff VERA McVEY continued in her capacity as Chief Credit Officer HVB Americas & Asia and took on the function as Head of Corporates.

47.     Prior to July 2003, the three roles assumed by Plaintiff VERA McVEY (Regional Head HVB Americas, Chief Credit Officer HVB Americas & Asia, and Head of Corporates) were filled by three different employees.

48.     From approximately July 2003 through approximately March 2004, Plaintiff VERA McVEY successfully performed the functions of three employees.  Nevertheless, throughout that period, Plaintiff continued to receive less compensation than various male counterparts who continued to perform the functions of individual employees.

49.     In approximately July 2003, Plaintiff VERA McVEY asked Diana Roeber, Head of Human Resources HVB Americas, for compensation details for all staff at HVB Americas. Ms. Roeber warned: "You won't like what you're going to see."

50.     In approximately July 2003,  Diana Roeber, Head of Human Resources HVB Americas, informed Plaintiff VERA McVEY that Head of Credit Real Estate Johann Berger received a larger bonus than Plaintiff, without apparent justification.

51.     In approximately 2003, Plaintiff VERA McVEY's total compensation of $475,000 remained significantly below that of her male peers, Christopher Wrenn and Matthew Dunn.

52.     In approximately 2003, the cash bonus Defendants HVB paid Plaintiff was far lower than the cash bonuses it awarded her male peers.

53.     In approximately 2003, Defendants HVB paid Plaintiff VERA McVEY a cash bonus of $125,000.

54.     In approximately 2003, Defendants HVB paid Plaintiff's male peer, Christopher Wrenn, $650,000 in total compensation.  Defendants HVB paid Christopher Wrenn approximately $175,000 more (or 37% above) the total compensation it paid Plaintiff for commensurate work.

55.    In approximately 2003, Plaintiff's male peer, Christopher Wrenn, received a $300,000 bonus, approximately $175,000 more than Plaintiff received.

56.    In approximately 2003, Defendants HVB paid Plaintiff's male peer, Matthew Dunn, a total compensation of approximately $725,000 (consisting of a $225,000 base salary, and a cash bonus of $500,000.) Mr. Dunn's compensation structure reflects his trading function (i.e., low salary and high bonus) but exceeded Plaintiff VERA McVEY's compensation by 53%.

57.    In approximately 2003, the only male peer who earned less than Plaintiff VERA McVEY was Gregor Medinger. Mr. Medinger's area did not perform satisfactorily, and he was asked to retire early, and did so, in mid-2003.

58.    Commencing approximately July 2003, Plaintiff VERA McVEY reported directly to Ronald Seilheimer, Divisional Board Member for HVB Americas, in her capacity as Regional Head and Head of Corporates.

59.    On January 14, 2004, HVB Group's Chief Risk Officer Michael Kemmer discussed Plaintiff's 2003 performance as Chief Credit Officer with her. Plaintiff VERA McVEY's 2003 performance was appraised by her direct supervisor, Dr. Stefan Schmittmann. Even though Plaintiff had served in three capacities since July 2003 (Regional Head Americas, Chief Credit Officer Americas & Asia, and *de facto* Head of Corporates), Dr. Kemmer expressed his full satisfaction with Plaintiff's performance as Chief Credit Officer Americas & Asia and Regional Head Americas. Dr. Kemmer was particularly pleased with a "satisfactory" rating by the FED for Credit Risk Management during a difficult time.

60.    On or about January 14, 2004, Dr. Michael Kemmer informed Plaintiff VERA McVEY that HVB Group's C&M Board Member Dr. Stefan Jentzsch had hired an executive search firm to look *outside* HVB for an executive to take over *both* the HVB Americas Head of

Corporates position *and* the HVB Americas Regional Head position. For the first time, Dr.

Kemmer told Plaintiff VERA McVEY that her assignment as Regional Head HVB Americas was

"temporary" and "transitional."

61.      On January 14, 2004, Plaintiff VERA McVEY informed Dr. Michael Kemmer

that her imminent demotion to her former position as Chief Credit Officer and her consequential

relinquishment of the Management Committee Chair was not only unanticipated and

unwarranted, but also a significant professional embarrassment and a detrimental setback to her

career. While Dr. Kemmer indicated he believed Plaintiff was qualified to continue serving as

HVB Americas Regional Head and Chair of the Management Committee, nothing was done.

62.      On or about February 17, 2004, Plaintiff VERA McVEY met with C&M

Divisional Board Member Ronald Seilheimer and Heinz Laber, Global Head of Human

Resources. During this meeting, Mr. Seilheimer informed Plaintiff that C&M Management had

decided to promote Jan Kupfer, then Head of Credit Financial Institutions in Munich, as the new

HVB Head of Corporates and the new HVB Americas Regional Head. In so doing, Ronald

Seilheimer explained that "going forward," HVB wanted "fresh blood" and "a younger man" to

represent C&M in HVB Americas. Despite his role as Head of Human Resources, Heinz Laber

failed to comment concerning Mr. Seilheimer's flagrantly discriminatory remarks. Plaintiff was

shocked.

63.      At the time of his promotion and my demotion, Plaintiff VERA McVEY and Mr.

Kupfer were at the same functional level within Risk Management. However, Mr. Kupfer had

significantly less overall experience in Risk Management than Plaintiff, and no prior experience

in corporate marketing nor international business. Plaintiff VERA McVEY had over 20-years

experience in Risk Management whereas Mr. Kupfer had approximately 10-years experience, and

Plaintiff had some 15-years of business and marketing experience.

64.     On or about March 30, 2004, Ronald Seilheimer presented Jan Kupfer as the new Head of Corporates and Head of the Management Committee to HVB Americas' business and service unit heads.

65.     On March 31, 2004, Heinz Laber and Ronald Seilheimer informed Plaintiff VERA McVEY that the functional title listed in her contract would revert to Chief Credit Officer Americas & Asia. While they promised Plaintiff continued membership in HVB Americas' Management Committee, they refused to confirm her membership in the Asian Management Committee, since Jens-Peter Neumann was responsible for that region and was considering "changes" there.

66.     In approximately 2004, Defendants HVB paid Plaintiff VERA McVEY a total compensation of approximately $850,000 ($350,000 base salary plus $500,000 cash bonus.)

67.     In approximately 2004, even though Plaintiff VERA McVEY was Regional Head, Christopher Wrenn's total compensation of $750,000 was only $100,000 less than Plaintiff ($350,000 base salary and $400,000 cash bonus.)

68.     In approximately 2004, even though Plaintiff VERA McVEY was Regional Head and had significantly more responsibility, Defendants HVB paid Matthew Dunn a significantly higher amount than it paid Plaintiff. In approximately 2004, Matthew Dunn's total compensation was $1,040,000 ($240,000 base salary plus $800,000 cash bonus.) Mr. Dunn was paid $190,000 more ( 22% higher )than Plaintiff even though he had significantly less responsibility.

69.     On or about November 22, 2004, Plaintiff VERA McVEY complained to HVB Americas' Head of Human Resources Diana Roeber about gender discrimination at HVB, and

asked Ms. Roeber what the chances were for a woman to succeed at the Bank.  Ms. Roeber admitted that German banks were neither very committed to nor focused on promoting women, and that the financial services industry in general was not a good place for women to advance their careers.  Human Resources was otherwise non-responsive.

70.     On or about January 31, 2005, in direct retaliation for her complaint concerning gender discrimination, Plaintiff VERA McVEY was bypassed for promotion.  Instead, Dr. Thomas Gross' promotion to Divisional Board Member reporting to Chief Risk Officer Michael Kemmer was announced.  In his new function, Dr. Gross became responsible for Credit Risk Controlling and Market Risk Controlling.  At the time of his promotion, Dr. Gross had worked at HVB less than one year and had very limited background in Risk Management.  Prior to HVB, Dr. Gross had worked as a consultant with the Boston Consulting Group.  Even though Plaintiff had significantly more experience than Dr. Gross, I was bypassed for this promotion.

71.     Of the approximately 26 Divisional Board Members serving the HVB Group, only one, Dr. Regina Prehofer, is a woman.

72.     While there are three Divisional Board Members serving the HVB Group Risk Management (CRO) Division, no women have been promoted to the Divisional Board Member level within Plaintiff's Division.  The Divisional Board Member level is one level above Plaintiff's current position.  The three Divisional Board Members, (Papenfuss, Giesecke, and Gross) report to the Chief Risk Officer, also a man (Kemmer.)

73.     Plaintiff VERA McVEY is one of six Managers who report to the male Divisional Board Member for International Credit & Workout, Chief Credit Risk Officer Giesecke.  Four of the six Managers are men.

74.     Plaintiff VERA McVEY is one of approximately 14 members on the Group Credit

Committee that reports to the Board for Credit decisions. Plaintiff is the only woman on this Committee.

75.     Plaintiff **VERA McVEY** is one of approximately 10 members on the Group Risk Committee, but only for Americas. Until her demotion in May 2005, Plaintiff **VERA McVEY** also served on the Group Risk Committee for Asia. Throughout both tenures, Plaintiff has been the only woman on the Group Risk Committee.

76.     Presently, Plaintiff **VERA McVEY** is the only woman on the four-member HVB Management Committee (along with Jan Kupfer, Christopher Wrenn and Matthew Dunn.) Since her demotion in July 2004, Plaintiff no longer serves as the Chair of the HVB Management Committee Americas.

77.     Of the eight Managers that report to Plaintiff **VERA McVEY** in her capacity as Chief Credit Officer Americas, three are women. Of the eight Managers that report to Christopher Wrenn as Chief Operating Officer, three are women. Of the ten Managers that report to Jan Kupfer as Chair of C&M Corporates, two are women. Of the six Managers that report to Matthew Dunn as Chair of C&M Markets, none are women.

78.     On February 28, 2005, after consulting with Henning Giesecke, Jan Kupfer informed Plaintiff **VERA McVEY** that her annual bonus for 2004 was $500,000, the same as for 2003. Mr. Kupfer explained that the bonus was in acknowledgment of her service during half of 2004 as Regional Head.

79.     On February 28, 2005 Jan Kupfer indicated to Plaintiff **VERA McVEY** that one of her two male colleagues on the Management Committee, Christopher Wrenn, also received the same bonus as in 2004, whereas Matthew Dunn received an even higher bonus.

80.     Although Jan Kupfer had only served as Regional Head for approximately six

months in 2004, on information and belief, Mr. Kupfer's annual bonus for 2004 was larger than that paid to Plaintiff **VERA McVEY**.

81.     On or about March 1, 2005, Defendants **HVB** paid Plaintiff **VERA McVEY** her 2004 bonus of $500,000 (i.e., $150,000 guaranteed bonus, $350,000 discretionary bonus.)

82.     In approximately April 2005, Henning Giesecke informed Plaintiff **VERA McVEY** that he planned to promote Plaintiff's subordinate, Senior Risk Manager Asia, Peter Vassiliou, to the Management Committee Asia and to remove Plaintiff as Chief Credit Officer Asia. Mr. Vassiliou's promotion was effectively Plaintiff's demotion, and in retaliation for Plaintiff's complaints of gender discrimination. At the time of his promotion, Peter Vassiliou had approximately 10-12 years experience whereas Plaintiff **VERA McVEY** had approximately 37-years of banking experience. Plaintiff **VERA McVEY** hired Peter Vassiliou.

## AS AND FOR A FIRST CAUSE OF ACTION
### FEDERAL EQUAL PAY ACT

82.     Plaintiff **VERA McVEY** and the **CLASS MEMBERS** repeat and reallege each and every allegation contained in paragraphs 1 through 81 inclusive, with the same force and effect as though more fully set forth at length herein.

83.     As a consequence of Defendants' gender discrimination, Plaintiff **VERA McVEY** and the **CLASS MEMBERS** (i.e. other female executives, officers and managers working in New York and throughout the United States) were deprived of equal pay for commensurate work because of their gender.

84.     The aforesaid acts of gender discrimination by Defendants **HVB**, its officers, directors, executives, supervisors, managers and/or employees, violated Plaintiff **VERA McVEY's**

rights as provided under The Equal Pay Act of 1963, Title 29 of the United States Code, Section 206(d)(1).

85. As a consequence of Defendants' gender discrimination since Plaintiff and the Class Members have been employees of Defendants HVB, Plaintiff VERA McVEY and the CLASS MEMBERS have incurred monetary loss.

86. As a consequence of the foregoing misconduct of Defendants HVB, Plaintiff VERA McVEY and the CLASS MEMBERS have sustained damage in the sum of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS compensatory damages.

## AS AND FOR A FIRST CAUSE OF ACTION
## NEW YORK STATE EQUAL PAY ACT

87. Plaintiff VERA McVEY and the CLASS MEMBERS repeat and reallege each and every allegation contained in paragraphs 1 through 81 inclusive, with the same force and effect as though more fully set forth at length herein.

88. As a consequence of Defendants' gender discrimination, Plaintiff VERA McVEY and the CLASS MEMBERS (i.e. other female executives, officers and managers working in New York and throughout the United States) were deprived of equal pay for commensurate work because of their gender.

89. The aforesaid acts of gender discrimination by Defendants HVB, its officers, directors, executives, supervisors, managers and/or employees, violated Plaintiff VERA McVEY's rights as provided under New York's Equal Pay Act, New York State Labor Law, Section 194 et seq.

90. As a consequence of Defendants' gender discrimination since Plaintiff and the Class Members have been employees of Defendants HVB, Plaintiff VERA McVEY and the CLASS

MEMBERS have incurred monetary loss.

91.    As a consequence of the foregoing misconduct of Defendants HVB, Plaintiff VERA McVEY and the CLASS MEMBERS have sustained damage in the sum of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS compensatory damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## NYSHRL -RETALIATION

92.    Plaintiff VERA McVEY and the CLASS MEMBERS repeat and reallege each and every allegation contained in paragraphs 1 through 91 inclusive, with the same force and effect as though more fully set forth at length herein.

93.    As set forth hereinabove, Plaintiff VERA McVEY formally complained to her supervisors and the Human Resources Department of Defendants HVB, concerning the ongoing gender discrimination at the Bank, including the Bank's ongoing practice of refusing to provide equal pay to women for equal work.

94.    Plaintiff made this formal complaint on her own behalf and on behalf of her fellow CLASS MEMBERS, i.e., other female executives, officers and managers employed in the United States by Defendants HVB.

95.    As a consequence of Plaintiff's complaint for violations of the Equal Pay Act, Plaintiff VERA McVEY was subjected to unlawful retaliation, including adverse employment actions such as demotion, failure to promote, and decreased compensation.

96.    Other CLASS MEMBERS have suffered comparable retaliation as a consequence of their complaints concerning the companies ongoing violation of the Equal Pay Act, and of their ongoing attempts to achieve equal pay for equal work.

97.    The aforesaid acts of intentional retaliation by Defendants HVB, its officers, directors, executives, supervisors, managers and/or employees, violated Plaintiff VERA McVEY's rights as well as the rights of the CLASS MEMBERS as provided under New York State Human Rights Law - Executive Law Section 290 et. seq.

98.    As a consequence of Defendants' retaliation during Plaintiff VERA McVEY's and the CLASS MEMBERS' employment by Defendants HVB, Plaintiff VERA McVEY and the CLASS MEMBERS have sustained and continue to sustain conscious pain and suffering, great mental distress, shock, fright and humiliation, and have incurred and continue to incur monetary loss, and other adverse employment actions.

99.    As a consequence of the foregoing misconduct of Defendants HVB, Plaintiff VERA McVEY and her CLASS MEMBERS have been damaged  in the sum of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.


WHEREFORE, Plaintiff VERA McVEY and the CLASS MEMBERS demand judgment against Defendants HVB in the First Cause of Action in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS; Plaintiff VERA McVEY and the CLASS MEMBERS demand judgment against Defendants HVB in the Second Cause of Action in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS; and Plaintiff VERA McVEY and the CLASS MEMBERS demand judgment against Defendants HVB in the Third Cause of Action in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS, all together with the

costs and disbursements of this action, including attorneys' fees, plus interest, and for any other relief

which this Court deems just and proper.

Dated:      New York, New York
              November 17, 2005

                    MORELLI RATNER PC

By:                                  
      David S. Ratner, Esq.  (DSR-7758)
      Martha M. McBrayer, Esq. (MM-7097)
      950 Third Avenue, 10th Floor
      New York, New York 10022
      (212) 751-9800